UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JONATHAN RODEN,

    Plaintiff,

v.

    Case No. 16-11208
    District Judge Victoria A. Roberts
    Magistrate Judge Anthony P. Patti

MICHELLE FLOYD, et al.,

    Defendants.

_____/

**ORDER (1) ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION (Doc. # 52); (2) GRANTING AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. # 44)**

Jonathan Roden ("Roden") brought a Prisoner's Civil Rights case against Michelle Floyd ("Floyd"), Richard Cady ("Cady"), and Beverly Haynes-Love ("Haynes-Love") (collectively, "Defendants") under 42 U.S.C. § 1983. He alleges that Defendants retaliated against him for filing grievances, in violation of his First Amendment Rights. Defendants filed a motion for summary judgment. The case was referred to Magistrate Judge Anthony Patti.

    I.    Background

Roden was imprisoned at G. Robert Cotton Correctional Facility ("JCF"), where he was enrolled in Jackson College as part of the "Pathways from Prison Education Initiative" in January 2015. Roden asserts that he worked as a GED tutor during the day. He was eventually promoted to academic tutor while attending classes at night. The director of the program testified at deposition that he was a good student, and one of Roden's professors testified that he did a nice job with the students he tutored.

1

Roden filed numerous grievances while enrolled in Jackson College. In April and May 2015, he requested a study hall for students in order to avoid the violence in the prison yard, and made complaints about, *inter alia*, the lack of telephones and improper conduct of unit staff. Roden claims that in response to these grievances, the study hall was approved and more phones were ordered. In June 2015, Roden alleges that he filed a grievance against Defendants Floyd and Haynes-Love after Haynes-Love, a corrections officer, prevented him from attending one of his classes. Roden claims that in late June 2015, Floyd stopped him outside of class and threatened to transfer him for writing a grievance.

In July 2015, Roden was named to the Dean's List, but was unable to attend the awards ceremony. He sent a handwritten note to Floyd thanking her for her support, but also saying that some cookies from the ceremony could have been saved for him. Floyd, a Deputy Warden, brought the note to the attention of Roden's supervisor David Clark, and to the attention of Warden Shawn Brewer. She requested that Clark terminate Roden from his tutor jobs and that Brewer transfer him. Brewer agreed that Roden's behavior presented a safety concern and that he could not remain at JCF. Roden claims that Floyd emailed the transfer coordinator and instructed that Roden be transferred. JCF terminated Roden from his tutor jobs on July 31, 2015. In August 2015, Roden submitted a grievance for what he considered to be an improper termination.

In August 2015, Roden says that his schoolwork was improperly confiscated by an officer while he was in class. Roden submitted a grievance on the officer for taking his school work.

2

Roden claims that on August 13, 2015, the grievance coordinator contacted Floyd to inform her that Roden had filed another grievance, which initiated another series of emails in which Floyd reiterated her desire to transfer Roden. His transfer was approved that day. According to Roden, on August 24, 2015, Cady, the Resident Unit Manager, instructed that the security classification be completed for Roden's transfer. Roden was told he was being transferred on August 26, 2015, and was ultimately transferred on August 27, 2015. The college program director testified that Roden was dropped from the program after he was transferred, around the first week of September 2015.

On August 28, 2015, Roden submitted a grievance, alleging he was transferred in retaliation for filing grievances. He claims that because he filed these grievances, Defendants transferred him from JCF and removed him from the college program, which caused him to lose paid tuition and deprived him of the opportunity to earn his degree. The grievance was rejected; Defendants say it contained multiple issues.

II. Motion for Summary Judgment and Report and Recommendation

In their motion for summary judgment, Defendants argue Roden: 1) failed to exhaust administrative remedies; 2) did not allege personal involvement of Haynes-Love in the request or decision to transfer him; and 3) did not state a claim for retaliation. They also say they are entitled to qualified immunity.

Magistrate Judge Patti issued a Report and Recommendation ("R&R") recommending that the Court grant in part and deny in part Defendants' motion for summary judgment. Magistrate Judge Patti concluded that: 1) Roden's grievance did

3

not contain multiple unrelated issues, and he properly exhausted administrative remedies; 2) Roden's claims against Haynes-Love should be dismissed because Roden failed to claim her personal involvement in his transfer; 3) genuine issues of material fact exist as to whether a) Roden's prison transfer was an adverse action; b) the transfer could be attributed to Floyd's request; c) Defendants would have taken the actions to transfer Roden absent his grievances; and d) Floyd and Cady should enjoy qualified immunity.

Defendants filed two objections. First, they object to Magistrate Judge Patti's conclusion that Roden's: 1) grievance was improperly rejected for containing multiple issues; and 2) prison transfer was an adverse action.

Defendants also object to Magistrate Judge Patti's conclusion that Floyd was a decisionmaker for the purposes of Roden's transfer, but they make this objection solely for the purpose of preserving the issue for appeal. Accordingly, the Court does not address this objection.

Roden did not file objections to any of the dispositive recommendations in the R&R, but objects to information contained in its factual background. A footnote in the R&R states that Roden did not attach the purported emails from Floyd to the transfer coordinator as exhibits, and that they do not appear elsewhere in the record. Roden says the emails were attached to his Motion for Appointment of Counsel, and attaches them to his objections to the R&R. Since this objection does not pertain to any dispositive recommendations, the Court does not address it.

III.   Standard of Review

4

After proper objections are made, the Court conducts a *de novo* review of a Magistrate Judge's Report and Recommendation on a dispositive motion. 28 U.S.C. § 636(b)(1); F. R. Civ. P. 72(b)(3). A court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. *Id.* A district court need not conduct *de novo* review where the objections are "[f]rivolous, conclusive or general." *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir.1986) (citation omitted). After completing a *de novo* review, there is no requirement that the district court articulate all of the reasons it rejects a party's objections. *Tuggle v. Seabold*, 806 F.2d 87, 93 (6th Cir. 1986).

"[W]hile the Magistrate Judge Act, 28 U.S.C. § 631 et seq., permits de novo review … , absent compelling reasons, it does not allow parties to raise at the district court stage new arguments or issues that were not presented to the magistrate." *Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000)

IV. Analysis

After *de novo* review of the motion for summary judgment, the R&R, Defendants' objections, and the remainder of the record, the Court overrules Defendants' objections.

A. Defendants' First Objection Is Rejected; Roden Properly Exhausted His Retaliation Claims

Defendants first argue that Magistrate Judge Patti erred in ruling that Roden's grievance claiming retaliation was improperly rejected for containing multiple unrelated issues. Defendants say the alleged harms to Roden – termination from his school assignment and prison jobs – occurred before his transfer and were, therefore,

5

unrelated to his transfer. From this, Defendants conclude that Roden's alleged harms are unrelated to the transfer, and his grievance was properly rejected for containing multiple issues.

Defendants' failed to raise this argument in their motion for summary judgment, and the Court could properly consider it waived. *Murr v. United States*, 200 F.3d at 902 n.1. However, the Court concludes the argument fails on its merits.

First, there is at least a genuine issue of material fact as to when Roden was dropped from the college program. Its director testified that he was dropped after his transfer. Second, Defendants fail to cite to any case that says that the alleged retaliation must occur before the alleged harms before a grievance can escape the label of containing multiple issues. Third, arguably, the retaliation began when Floyd sent emails requesting that Roden be transferred, which – as Magistrate Judge Patti recognized – could be found by a jury to have set in motion Roden's transfer. If this is found to be true, the alleged harms occurred after the retaliation.

A prisoner "properly exhausts where the multiple issues are related or the grievance really involves one claim and multiple harms." *Reeves v. Salisbury*, 2012 U.S. Dist. LEXIS 108297, *14 (E.D. Mich. Aug. 2, 2012) (internal citations and quotations omitted). "On the other hand, if the grievance contains two completely unrelated issues, it is not proper." *Id.*

Magistrate Judge Patti appreciated the difference between instances where a grievance presents multiple unrelated issues (not permissible) and instances where a grievance presents multiple harms stemming from one instance of retaliation

(permissible). He acknowledges cases in which the court ruled that a grievance was properly rejected for containing multiple unrelated harms. *See Rusiecki v. Trombley*, 2007 U.S. Dist. LEXIS 99733, at *16 (E.D. Mich. Nov. 30 2007) (grievance properly rejected because it contained a complaint about legal mail and an unrelated complaint regarding a failed monetary disbursement); *Crump v. Caruso*, 2010 U.S. Dist. LEXIS 97492, at *9 (W.D. Mich. Sept. 17, 2010) (grievance properly rejected where it "addressed not only a claim regarding [prisoner's] lost property, but also claims of arbitrary punishment, deliberate indifference to medical needs, improper assignment to a smoking unit, and arbitrary refusal to allow him to see the quartermaster").

Roden's claims are not unrelated as the claims in *Rusiecki* and *Crump* were. Instead, they involve multiple harms (losing employment and college enrollment program) stemming from one alleged retaliation.

Judge Patti did not err in concluding that Roden exhausted administrative remedies.

### B. Defendants' Second Objection Is Rejected; Roden's Transfer Could Be Considered An Adverse Action

Defendants next argue that Magistrate Judge Patti erred in ruling that Roden has raised a genuine issue of material fact as to whether he suffered an adverse action.

In their objections, Defendants cite to cases in which a court ruled that the circumstances surrounding a transfer constituted a de minimis discomfort. But none of these cases stands for the proposition that foreseeable consequences of a prison transfer always constitute de minimus comforts. To the contrary, they uphold the well-

7

established rule that "in cases where foreseeable, negative consequences 'inextricably follow' from a transfer, the determination of [whether] a retaliatory action is sufficiently severe to deter a person of ordinary firmness from exercising his or her rights is a *question of fact.*" Hudson v. Wade, 2014 U.S. App. LEXIS 25160, *4 (6th Cir. Mar. 5, 2014). (internal citations and quotations omitted) (emphasis in original).

Magistrate Judge Patti correctly laid out the law. The question of whether an action is adverse is ordinarily a question for the trier of fact, and "will not be amenable to resolution as a matter of law." Bell v. Johnson, 308 F.3d 594, 603 (6th Cir. 2002). A plaintiff's burden is to establish a factual basis for his claim that the retaliatory acts constitute more than a de minimus injury. Id. at 606.

As the R&R indicates and supports with case law, a jury could conclude that Roden's removal from the Jackson College program and the loss of his employment were foreseeable negative consequences that inextricably follow from Defendants' transfer of him. Accordingly, Magistrate Judge Patti did not err in making this ruling.

V.   Conclusion

The Court **ADOPTS** Magistrate Judge Patti's Report and Recommendation: Defendants' Motion for Summary Judgment is **GRANTED** in part and **DENIED** in part. Roden's claims against Defendant Beverly Haynes-Love are dismissed with prejudice. Roden's claims against Defendants Michelle Floyd and Richard Cady shall proceed to trial.

**IT IS ORDERED.**

                S/Victoria A. Roberts
                Victoria A. Roberts
                United States District Judge

Dated: March 15, 2018

---

The undersigned certifies that a copy of this document was served on the attorneys of record and Jonathan Roden by electronic means or U.S. Mail on March 15, 2018.

s/Linda Vertriest
Deputy Clerk

---