UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JONATHAN RODEN,

        Plaintiff

v.

MICHELLE FLOYD,
RICHARD CADY, SHAWN
BREWER, and JAMES ROTH

        Defendants.
_____/

Case No. 2:16-cv-11208
District Judge Victoria A. Roberts
Magistrate Judge Anthony P. Patti

**REPORT AND RECOMMENDATION TO DENY PLANTIFF'S MOTION FOR PRELIMINARY INJUNCTION DIRECTING DEFENDANTS TO REINSTATE PLAINTIFF INTO THE JACKSON COLLEGE PEI AT JCF (DE 61)**

**I.     RECOMMENDATION**: The Court should deny Plaintiff's motion for a preliminary injunction directing Defendants to reinstate Plaintiff into the Jackson College PEI at JCF.  (DE 61.)

**II.    REPORT**

    **A.     Background**

        **1.     Procedural history**

Plaintiff Jonathan Roden filed his complaint and application to proceed *in forma pauperis* on April 4, 2016 in the Western District of Michigan.  (DE 1.)  The Court granted his application and transferred the case to this district.  (DE 4.)

Plaintiff brought this lawsuit against Defendants Michelle Floyd (Deputy Warden), Richard Cady (Resident Unit Manager), and Beverly Haynes-Love (Corrections Officer), alleging that they transferred him to a more restrictive correctional facility and removed him from Jackson College classes because of grievances he filed regarding the education program and treatment of students. (DE 1.) He asserted a retaliation claim under the First and Fourteenth Amendments to the United States Constitution and sought compensatory damages. (*Id.*, Count I.)

On March 15, 2018, the Court entered an Opinion and Order, adopting my Report and Recommendation, and granting in part and denying in part Defendants' motion for summary judgment. (DEs 52, 57.) Plaintiff's claims against Defendant Haynes-Love were dismissed with prejudice, and his First Amendment claims against Defendants Floyd and Cady are to proceed to trial. (*Id.*)

On September 5, 2018, the Court granted Plaintiff's unopposed motion to amend the complaint and ordered that DE 59 at Page ID 1047-1058 be treated as Plaintiff's Amended Complaint. (DE 65.) Plaintiff's Amended Complaint: (1) adds two defendants, Shawn Brewer (Warden) and James Roth (Inspector); (2) re-asserts the retaliation claim under the First and Fourteenth Amendments against all Defendants; and (3) adds a second cause of action against all Defendants for "violation of the United States Constitution Eighth and Fourteenth Amendments and Michigan common law by civil conspiracy through concerted actions,

manufacturing a false sexual harassment allegation." (DE 59.) Plaintiff seeks damages in the amount of $380,000. (*Id.*)

### 2. Relevant factual background

The underlying facts in this matter have been laid out and discussed in the Court's report and recommendation regarding Defendants' motion for summary judgment, and Judge Roberts' Order adopting that report and recommendation. (DEs 52, 57.) Accordingly, I will only address here those facts necessary to decide the instant motion for preliminary injunction.

Plaintiff Jonathan Roden was imprisoned at the G. Robert Cotton Correctional Facility (JCF) during the events relevant to his complaint. Plaintiff alleges that he transferred to JCF in December 2014 to attend Jackson College as part of the "Post-Secondary Education Initiative" (PEI), with the goal of obtaining an associate's degree. Plaintiff enrolled in the PEI program in January 2015, self-paid for his first term of classes, and worked as a tutor. Plaintiff asserts that he was informed in the summer of 2015 that he would be receiving a Pell Grant the following spring. (DE 61 at 12.) He claims that he "would have been grandfathered in, received a Pell Grant, and finished [his] education," but that he instead was "removed from Jackson College PEI" and transferred from JCF to a "non-PEI" facility by Defendants in August 2015 "as retaliation for filing grievances." (*Id.* at 13.)

3

Plaintiff filed numerous grievances while enrolled in Jackson College, including grievances requesting a study hall for students and regarding the lack of telephones and improper conduct of unit staff. (DE 59 at 6-7.) He claims that in late June 2015, Defendant Floyd stopped him outside of class and threatened to transfer him for writing a grievance. (*Id.* at 7.) In July 2015, Plaintiff was named to the Dean's List, but was unable to attend the awards ceremony. (*Id.* at 7-8.) He sent a handwritten note to Defendant Floyd thanking her for her support, but also saying "But you all could have saved me some cookies. Y'all ate all the cookies." (*Id.* at 8 (emphasis in original).) Floyd brought the note to the attention of Plaintiff's supervisor David Clark, and to Warden Shawn Brewer, and she requested that Clark terminate Plaintiff from his tutor jobs and that Brewer transfer him. Brewer agreed that Plaintiff's behavior presented a safety concern and that he could not remain at JCF. (*Id.* at 8-9.) JCF terminated Plaintiff from his tutor jobs on July 31, 2015, and Plaintiff submitted a grievance in August 2015 for what he considered to be an improper termination. (*Id.* at 9-10.) Plaintiff's transfer from JCF was approved on August 13, 2015; Defendant Cady instructed that the security classification be completed for Plaintiff's transfer on August 24, 2015; Plaintiff was told he was being transferred on August 26, 2015; and he was ultimately transferred to another facility on August 27, 2015. On August 28, 2015, Plaintiff

submitted a grievance alleging he was transferred and dropped from the PEI program in retaliation for filing grievances. (*Id.* at 10; DE 52 at 7.)

### B. Plaintiff's Motion for Preliminary Injunction

On May 21, 2018—over two years after this suit was initially filed—Plaintiff filed the instant motion for preliminary injunction directing Defendants to "rescind the school restriction, transfer Plaintiff back to G. Robert Cotton Correctional Facility or any Jackson area facility that offers full PEI, place him back in school, and restore his tutor jobs." (DE 61.) Plaintiff contends that he is suffering irreparable harm because he is being deprived of a cognizable liberty interest in remaining in his position as a student and as a tutor. (*Id.* at 5-6.) He further argues that he has demonstrated a likelihood of success on the merits of his retaliation claim, having survived Defendants' motion for summary judgment as to his retaliation claims against Defendants Floyd and Cady. (*Id.* at 6-10.) Plaintiff also claims that the "balance of hardship overwhelmingly favors" him and that the "[p]rotection of [c]onstitutional [r]ights is always a compelling public interest." (*Id.* at 10-11.)

Defendants did not file a response to Plaintiff's motion.

### C. Standard

The issuance of preliminary injunctive relief pursuant to Federal Rule of Civil Procedure 65 is committed to the discretion of the district court. *See*

5

*Northeast Ohio Coal. v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006); *Nader v. Blackwell*, 230 F.3d 833, 834 (6th Cir. 2000). In exercising that discretion, a court must consider whether the plaintiff has established the following elements: (1) a strong or substantial likelihood of success on the merits; (2) the likelihood of irreparable injury if the preliminary injunction does not issue; (3) the absence of harm to other parties; and (4) the protection of the public interest by issuance of the injunction. *Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000). "These factors are to be balanced against one another and should not be considered prerequisites to the grant of a preliminary injunction." *Id.*

"[T]he preliminary injunction is an extraordinary remedy involving the exercise of a very far-reaching power, which is to be applied only in the limited circumstances which clearly demand it," *Leary*, 228 F.3d at 739, and it is "never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). "[T]he proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion." *Leary*, 228 F.3d at 739. A plaintiff must affirmatively demonstrate his entitlement to injunctive relief.

This already stringent burden is even more difficult to meet where, as here, a plaintiff seeks an injunction not to maintain the status quo pending resolution of the case, but to obtain affirmative relief. This is because "[t]he purpose of a

preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be had." *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007) (quoting *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981)). Because of this, courts have identified three types of particularly disfavored preliminary injunctions: "(1) preliminary injunctions that alter the status quo; (3) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that it could recover at the conclusion of the trial on the merits." *Schrier v. Univ. of Colorado*, 427 F.3d 1253, 1259 (10th Cir. 2005). Motions seeking such preliminary injunctions must be more closely scrutinized than the already-disfavored motion for preliminary injunction which seeks to maintain the status quo. *See id.*; *Johnson v. Kay*, 860 F.2d 529, 540 (2d Cir. 1988). Indeed, the Prison Litigation Reform Act requires that "[p]reliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires the preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2).

Moreover, where a prison inmate seeks an order enjoining state prison officials, the Court is required to proceed with the utmost care and must be cognizant of the unique nature of the prison setting. *See Glover v. Johnson*, 855 F.2d 277, 284 (6th Cir. 1988); *Kendrick v. Bland*, 740 F.2d 432, 438 n.3 (6th Cir.

1984). Courts must accord prison administrators "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Ward v. Dyke,* 58 F.3d 271, 273 (6th Cir.1995). Correctional officials are professional experts in matters of security and discipline; as such, they are better suited to make decisions about security and discipline than are the courts. *Bell v. Wolfish,* 441 U.S. 520, 547 (1979). Moreover, "the operation of our correctional facilities is peculiarly the province of the Legislative and Executive Branches of our Government, not the Judicial." *Id.* at 548; *see also McKune v. Lile*, 536 U.S. 24, 37 (2002) ("'Running a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government.' To respect these imperatives, courts must exercise restraint in supervising the minutiae of prison life. Where, as here, a state penal system is involved, federal courts have 'additional reason to accord deference to the appropriate prison authorities.'") (citation omitted).

### D. Discussion

Defendants failed to respond to Plaintiff's motion. Indeed, I note that Defendants have failed to respond to any of Plaintiff's recent motions, including his motion to amend the complaint, motion for service of subpoena, and motion to

modify the case management order and set matter for trial. (DEs 59, 60, 63.) However, even though Plaintiff's instant motion for preliminary injunction is "unopposed," the motion will not be granted simply on that basis. Because a preliminary injunction is an "extraordinary remedy" which is "never awarded as of right," the Court must examine Plaintiff's motion to determine whether he has met his burden to affirmatively demonstrate his entitlement to injunctive relief. For the reasons that follow, I find that Plaintiff has not met his burden.

### 1. Substantial likelihood of success on the merits

Under controlling Sixth Circuit authority, Plaintiff's "initial burden" in demonstrating entitlement to preliminary injunctive relief is a showing of a strong or substantial likelihood of success on the merits of his claims. *NAACP v. Mansfield*, 866 F.2d 162, 167 (6th Cir. 1989). Plaintiff has not made such a showing. Instead, in support of his argument that he has established a substantial likelihood of success on the merits on his First Amendment claims,[1] Plaintiff cites excerpts from my report and recommendation denying Defendants' motion for summary judgment on Plaintiff's retaliation claims against Defendants Floyd and Cady and concludes that "it is reasonable to infer that [he] is likely to succeed on

---

[1] Plaintiff's motion for preliminary injunction was filed before his motion to amend the complaint was granted. Accordingly, this motion only addresses Plaintiff's then-pending First Amendment retaliation claim and did not address the second count in his amended complaint.

the merits." (DE 61 at 8-9.) However, that the Court previously found disputed issues of fact regarding Plaintiff's retaliation claim against Defendants Floyd and Cady, and thus denied summary judgment, does not satisfy Plaintiff's burden to demonstrate that he has a *strong* or *substantial* likelihood of success on the merits of that claim.

As explained above, "the proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion." *Leary*, 228 F.3d at 739. And, that already stringent burden is even more difficult to meet here, where Plaintiff seeks an injunction to obtain affirmative relief, and not to merely to maintain the status quo pending resolution of the case. *Schrier*, 427 F.3d at 1259. In denying Defendants summary judgment on Plaintiff's retaliation claim, the Court found that many outstanding genuine issues of material fact exist, including whether: (a) Plaintiff's prison transfer was an adverse action; (b) the transfer could be attributed to Defendant Floyd's request; (c) Defendants would have taken the actions to transfer Plaintiff absent his grievances; and, (d) Defendants Floyd and Cady should enjoy qualified immunity. (DEs 52, 57.) Accordingly, Plaintiff, at best, has an equal chance of succeeding as he does losing his First Amendment claims. This falls well short of demonstrating a *strong* or *substantial* likelihood of success on the merits. *See Leary,* 228 F.3d at 739 (noting that while on a motion for summary judgment a

plaintiff need only create a jury issue, "[t]o obtain a preliminary injunction he not only ha[s] to demonstrate specific harm, but also carry the *burden of persuasion,* showing a likelihood of success on the merits") (quoting *National Wildlife Fed'n v. Burford,* 878 F.2d 422, 432 (D.C. Cir.1989), *rev'd on other grounds sub nom, Lujan v. National Wildlife Fed'n,* 497 U.S. 871 (1990)); *see also Dulak v. Corizon Inc.*, No. 14-10193, 2014 WL 4678085, at *5 (E.D. Mich. June 9, 2014) ("[E]ven if Plaintiff is able to show a disputed issue of fact … such a showing is not sufficient for equitable relief.") (citing *Leary*, 228 F.3d at 739), *report and recommendation adopted*, 2014 WL 4678086 (E.D. Mich. Sept. 18, 2014); *Christian v. Michigan Dep't of Corrections—Health Servs.*, No. 12-12936, 2013 WL 607783, at *6 (E.D. Mich. Jan. 28, 2013) (same), *report and recommendation adopted*, 2013 WL 607779 (E.D. Mich. Feb. 19, 2013); *In re Navy Chaplaincy*, 928 F.Supp.2d 26, 36 (D.D.C.) ("If the record presents a number of disputes regarding the inferences that must be drawn from the facts in the record, the [C]ourt cannot conclude that [the] plaintiff has demonstrated a substantial likelihood of success on the merits."), *aff'd*, 738 F.3d 425 (D.C. Cir. 2013).  Thus, at best, this factor favors neither party.

    **2. Irreparable harm**

The second factor, the presence of irreparable harm, does not support the issuance of a preliminary injunction here.  Because injunctive relief "is an 'extraordinary remedy,' a court will not invoke its injunctive powers unless the

11

movant has met its burden of proof regarding irreparable harm." *McDonald's Corp. v. Burger King Corp.*, 87 F.Supp.2d 722, 725 (E.D. Mich. 1999). The "key word" in determining the extent of an injury sufficient to support the award of injunctive relief is "irreparable." *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 154 (6th Cir. 1991). Mere injuries, however substantial, are not enough. *Id.* The potential harm "must be 'actual and imminent,' and not merely remote or speculative." *Fox v. Massey-Ferguson, Inc.*, 172 F.R.D. 653, 680 (E.D. Mich. 1995), *aff'd*, 91 F.3d 143, 1998 WL 382272 (6th Cir. 1996); *McDonald's*, 87 F.Supp.2d at 725 ("any claimed irreparable harm must be 'imminent,' … with a 'substantial threat of impending injury'").

Plaintiff cites to *Newsom v. Norris*, 888 F.2d 371 (6th Cir. 1989) and *Elrod v. Burns*, 427 U.S. 347 (1979) for the proposition that "if a person is removed from his position because of impermissible retaliation then he is *presumed* to have suffered irreparable harm." (DE 61 at 5 (emphasis added).) In *Newsom*, plaintiff prisoners alleged that they had not been reappointed to their positions as inmate advisors in retaliation for complaints they had made about the Chairman of the Disciplinary Board, and they sought a preliminary injunction to direct their reappointment. 888 F.2d at 374-77. The Sixth Circuit explained that the district court made the "quintessential formulation of a finding" that "the plaintiffs' constitutionally protected rights to freedom of expression had been violated by the

12

defendants[.]" *Id.* at 375 n.4 (recognizing that both the magistrate judge and the district judge expressly found that "there is a substantial likelihood that the plaintiffs' complaints about [the Chairman] were the primary reason for their terminations"). The Sixth Circuit affirmed the district court's decision to grant preliminary injunctive relief, finding that the inmate advisors suffered irreparable injury from the infringement of their First Amendment rights, and that the injury continued even after termination. *Id.* at 378 (finding that "an individual, who has been subjected to direct and intentional retaliation for having exercised the protected constitutional right of expression, continues to suffer irreparable injury even after termination of some tangible benefit such as employment"). To reach its conclusion, the Sixth Circuit relied on the Supreme Court's statement in *Elrod*, 427 U.S. at 373, that "the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Id.*

Plaintiff here makes conclusory assertions that: "like the Plaintiffs in Newsome, [sic] [he] brought a First Amendment retaliation claim against MDOC officials alleging retaliatory transfer and removal from his position as tutor and student in the PEI program;" that "Defendants here conspired to deprive [him] of his position in retaliation for … having filed grievances;" that "the retaliation claims survived Summary Judgment;" and, that the Court should therefore "grant injunctive relief to prevent irreparable harm." (DE 61 at 6.) Plaintiff's reliance on

13

*Newsom*, however, is misplaced. The district court in *Newsom* made a specific factual finding following a hearing, "with respect to the likelihood of success on the merits of their claims," that the plaintiffs' complaints about the Chairman of the Disciplinary Board were the "but for" reason for their terminations from their positions as inmate advisors. *Newsom*, 888 F.2d at 375 n.4 (noting that "the court made specific findings sufficient to support an abridgement of the prison inmate advisors' constitutional rights under the facts of this case"). The *Newsom* court then found that impingement of the inmate advisors' First Amendment rights was sufficient irreparable injury to justify preliminary injunction. *Id.* at 378 (citing *Elrod*, 427 U.S. at 373).

In this case, however, unlike in *Newsom*, there has been no finding by this Court of "impermissible retaliation" and no finding of a substantial likelihood that Plaintiff's constitutional rights had been violated. Instead, this Court found that disputed issues of fact exist as to Plaintiff's First Amendment retaliation claims against Defendants Floyd and Cady. (DEs 52, 57.) And, as explained above, denial of summary judgment does not demonstrate a substantial likelihood of success on the merits. Thus, the *Newsom* holding is not dispositive. *See Raycom Nat., Inc. v. Campbell*, 361 F.Supp.2d 679, 687 (N.D. Ohio 2004) ("Because the court has concluded that [plaintiff] has failed to make a preliminary showing of

14

infringement on its First Amendment rights, the *Newsom* holding is not dispositive.").

Plaintiff has not otherwise offered any admissible evidence that he is in imminent danger of irreparable harm in the absence of an injunction, and his mere assertion that he will be injured, is insufficient. *See Ford v. Haas*, No. 16-11485, 2017 WL 6460299, at *2 (E.D. Mich. July 24, 2017) (denying preliminary injunctive relief because Ford's motion is based on unsupported speculation, and not admissible evidence), *report and recommendation adopted by* 2017 WL 6450602 (E.D. Mich. Dec. 18, 2017). Although Plaintiff did not expressly argue that he is irreparably harmed by loss of an educational opportunity, such a claim would nevertheless fail because such harm is speculative. Moreover, if Plaintiff ultimately prevails on the merits of his underlying claims and he is reinstated in the PEI program, he will have suffered a delay in his education, but delays in education do not constitute irreparable harm. *See Oser v. Capital Univ. Law Sch.*, No. 2:09-cv-709, 2009 WL 2913919, at *11 (S.D. Ohio Sept. 8, 2009) (noting that plaintiff had "no general right to attend law school" and that he will not be irreparably harmed by "[a]ny delay in his degree conferral" if he should ultimately succeed on his claim); *see also Montague v. Yale Univ.*, No. 3:16-cv-00885(AVC), 2017 WL 4942772, at *4 (D. Conn. Mar. 8, 2017) (finding a delay in education does not constitute irreparable harm but could be compensated with monetary

15

damages in the future); *Mahmood v. Nat'l Bd. of Med. Examiners*, No. 12-1544, 2012 WL 2368462, at *5 (E.D. Pa. June 21, 2012) (collecting cases stating that delays in education services do not constitute irreparable harm). Further, a claim of irreparable harm here is weakened by Plaintiff's two-year delay in filing the instant motion, which suggests that "he was not facing irreparable harm that required immediate action to remedy an imminent and non-speculative harm, but a harm that could be remedied upon a final adjudication of the merits." *Montague*, 2017 WL 4942772, at *4 (noting that if plaintiff believed he was facing irreparable harm, he should have filed the motion earlier) (citing *Citibank, N.A. v. Citytrust*, 765 F.2d 273, 276 (2d Cir. 1985) ("Preliminary injunctions are generally granted under the theory that there is an urgent need for speedy action to protect the plaintiffs' rights. Delay in seeking enforcement of those rights, however, tends to indicate at least a reduced need for such drastic, speedy action.")).

In addition, Plaintiff has made no showing that monetary relief is insufficient. *See Taubman v. Webfeats*, 319 F.3d 770, 778 (6th Cir. 2003) (explaining that preliminary injunctive relief is inappropriate where monetary relief is sufficient); *see also Performance Unlimited, Inc. v. Questar Publishers, Inc.*, 52 F.3d 1373, 1382 (6th Cir. 1995) (explaining that an irreparable injury is an injury that "cannot be undone through monetary remedies"). Indeed, that is the <u>only</u> relief he seeks in his amended complaint. (DE 59 at 113-14 (seeking "judgment

16

from this Court that Defendants, all of them, have violated Plaintiff's clearly established Constitutional rights" and "$380,000 in total damages").)  Plaintiff did not seek <u>any</u> injunctive relief as part of the relief requested in either his original complaint or his amended complaint (see DE 1 at 8; DE 59 at 13-14), and the deadline to amend pleadings in this matter has passed.  (DE 65.)

Because Plaintiff has failed to demonstrate irreparable harm, he has failed to meet his burden on this essential prong within the preliminary injunctive analysis.

### 3. Interests of third parties and the public at large

Finally, considering the third and fourth factors together, the interests of identifiable third parties and the public at large weigh against an injunction here, particularly since Plaintiff's motion impacts on prison administration.  *See Ford*, 2017 WL 6460299 at *3 (recognizing that an injunction regarding the ability to transfer a prisoner "would result in harm to both the MDOC and the public, because providing appropriate supervision of Michigan's large inmate population necessarily requires the ability to transfer prisoners between facilities when the need arises"). As recognized by our sister court:

> Plaintiffs' requested injunctive relief would require this court to intervene in the MDOC's day-to-day operation of its correctional facilities. Any interference by the federal courts in the administration of state prison matters is necessarily disruptive. These matters are best left to the state's prison officials.

> [J]udicial deference is accorded not merely because the administrator ordinarily will, as a matter of fact in a particular case, have a better grasp of his domain than the reviewing judge, but also because the operation of our correctional facilities is peculiarly the province of the Legislative and Executive Branches of our Government, not the Judicial.
>
> *Bell v. Wolfish,* 441 U.S. 520, 548, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). The issuance of a preliminary injunction in this case would unnecessarily intrude into the MDOC's day-to-day operations. The record does not suggest that the MDOC's operation of correctional facilities under the status quo poses such a threat to plaintiff that this court must intervene during the pendency of this lawsuit and exercise its judgment in place of the professional judgment of the MDOC's employees. Accordingly, this factor favors defendant.

*Jack-Bey v. Michigan Dep't of Corr.*, No. 1:13CV131, 2014 WL 3700040, at *3 (W.D. Mich. July 24, 2014). I similarly find that the issuance of a preliminary injunction in this case would "unnecessarily intrude into the MDOC's day-to-day operations" and that matters such as prisoner transfer and reinstatement in the PEI program and as a tutor are better left to the state's prison officials.

Further, Plaintiff's motion seeks affirmative relief – to be transferred back to JCF or another "Jackson area facility that offers full PEI" and to "restore his tutor jobs"—not to maintain the "status quo." Plaintiff is, in effect, seeking relief as if he has already prevailed on the merits and demonstrated retaliation. But the purpose of a preliminary injunction is to maintain the relative positions of the parties until the proceedings on the merits can be conducted. *See Certified*

*Restoration Dry Cleaning Network*, 511 F.3d at 542. Because Plaintiff's requested relief would alter the status quo, the public interest is not served by granting the request for preliminary injunctive relief. Therefore, a balancing of the above factors weighs substantially against a grant of preliminary injunctive relief.

### D. Conclusion

In sum, balancing the above factors weighs against a grant of preliminary injunctive relief. Therefore, for the reasons stated above, Plaintiff's request for preliminary injunctive relief (DE 61) should be **DENIED.**

### III. PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.* Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: November 13, 2018        s/*Anthony P. Patti*
                                            Anthony P. Patti
                                            UNITED STATES MAGISTRATE JUDGE

**Certificate of Service**

I hereby certify that a copy of the foregoing document was sent to parties of record on November 13, 2018, electronically and/or by U.S. Mail.

                                            s/Michael Williams
                                            Case Manager for the
                                            Honorable Anthony P. Patti