UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHNATHON RODEN #319782
    aka Johnathan Roden

        Plaintiff,

v.

MICHELLE FLOYD, RICHARD
CADY, and BEVERLY HAYNES-
LOVE,

        Defendants.
_____/

Case No. 16-11208
Hon. Victoria A. Roberts
Mag. Anthony P. Patti

**ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY
INJUNCTION AND TEMPORARY RESTRAINING ORDER [ECF No. 96]**

**I.    INTRODUCTION**

Johnathon Roden ("Roden") brings this action for a preliminary injunction and/or temporary restraining order, requesting the Court to enjoin the Michigan Department of Corrections ("MDOC") and its employees or agents and order that they reinstate his visitation privileges.

Roden's overarching lawsuit concerns a civil rights complaint under 42 U.S.C. § 1983, but the facts underlying this motion are substantially different.

A brief outline of the facts is sufficient. MDOC Director Heidi Washington ("Washington") placed a visitor restriction on Roden on October 18, 2018. The visitor restriction meant that for a minimum of one year Roden was only permitted visits from qualified clergy, his attorney, and certain government employees or representatives on official business. Then Roden would be eligible to appeal the restriction through MDOC procedures.

Roden says that Washington restricted his visitation privileges to force him to settle his § 1983 claim against MDOC employees. Defendants say that Washington merely implemented a policy that restricts visitation privileges for any prisoner who is twice found guilty of violating MDOC regulations on substance abuse. Roden does not dispute that he has two misconduct violations relating to substance use.

It is unclear who exactly Roden seeks to enjoin. The overarching § 1983 claim is against Michelle Floyd, Richard Cady, and Shawn Brewer ("Defendants"). However, Roden moves the Court to enjoin "MDOC Defendants, Agents, Director, Employees and all other persons acting in concer[t] and participation with them," specifically Washington.

Although Washington is not a named party, the state responded on her behalf.

For the purposes of analysis, the Court construes Roden's motion as a request to enjoin Washington, who is not a party to the lawsuit.

The Court **DENIES** Roden's request for injunctive relief.

## II. LEGAL STANDARD

Roden asks the Court to issue both a temporary restraining order and a preliminary injunction. A temporary restraining order is "a procedural remedy implemented on an ex parte basis when notice to the opposite party is impractical or would generate additional harm to the applicant." *Anglers of the Au Sable v. U.S. Forest Serv.*, 402 F.Supp.2d 826, 830 (E.D. Mich. 2005) (citing Fed. R. Civ. P. 65(b); *Granny Goose Foods, Inc. v. Bhd. of Teamsters*, 415 U.S. 423, 439, (1974)). Roden does not allege any reason why notice is impractical or dangerous, and Defendants responded to the motion. Therefore, the Court treats this motion as a request for preliminary injunction.

When deciding whether to issue a preliminary injunction, the district court considers the following four factors:

> (1) whether the movant has a "strong" likelihood of success on the merits; (2) whether the movant would otherwise suffer irreparable injury; (3) whether issuance of a preliminary injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of a preliminary injunction.

*Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000). The Court balances these factors against each other; they are not prerequisites for an injunction and no single factor is dispositive. *Id.*

The Court holds *pro se* litigants to a less stringent standard than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

### III. DISCUSSION

Defendants argue Washington is not a party to Roden's lawsuit, and so the Court cannot enjoin her. They also say that all the relevant factors weigh against granting Roden injunctive relief. Roden says that he is entitled to a preliminary injunction.

1. **Washington is not a party to the lawsuit and the Court cannot enjoin her**

Roden seeks to enjoin Washington (and possibly the MDOC) through a motion filed in relation to his § 1983 claim against employees of Cotton Correctional Facility. Neither Washington nor the MDOC is named as a party to Roden's § 1983 action.

Roden's motion for injunctive relief has no correlation to his § 1983 claims, other than his conclusory statement that he lost visitation privileges in retaliation for the civil rights lawsuit. He does not allege any connection between the suspension of visitation privileges and any named party.

It is a basic principle of law that a court cannot "make a decree which will bind any one but a party; . . . it cannot lawfully enjoin the world at large, no matter how broadly it words its decree. . . It is not vested with sovereign powers to declare conduct unlawful; its jurisdiction is limited to those over whom it gets personal service, and who therefore can have their day in court." *Swetland v. Curry*, 188 F.2d 841, 844 (6th Cir. 1951), quoting *Alemite Mfg. Corporation v. Staff*, 42 F.2d 832, 832-33 (2d Cir. 1930) (Judge L. Hand).

Washington is not a party to the lawsuit; the Court cannot enjoin her. However, Roden's motion also fails on the merits.

## 2. Roden's motion fails based on the factors for injunctive relief

Even if Roden had properly sued Washington or the MDOC, the Court would not issue injunctive relief. The factors for preliminary injunction weigh in Washington's and the MDOC's favor.

The Court considers the preliminary injunction factors separately.

### A. Roden does not show a strong likelihood of success on the merits

Roden argues that MDOC policy only allows Washington to terminate his visitation privileges if he was convicted of "two or more violations of the Class I misconduct charge of substance abuse that occurred within five

5

years of each other and do not arise from the same incident." [ECF No. 96, PageID.1344] Defendants point out that Roden relies on a policy that was not in place at the time Washington restricted his visitation privileges.

Roden relies on a MDOC Policy Directive that went into effect December 17, 2018. But Roden's substance abuse violations occurred on June 13, 2013 and September 25, 2018.

The "two violations within five years" regulation was not in effect when Roden lost visitation privileges. The Policy Directives that govern Roden's complaint became effective on June 1, 2018 (in place at the time of Roden's second Class I misconduct violation) and October 15, 2018 (in place when Washington terminated Roden's visitation privileges).

These Policy Directives have identical pertinent provisions. Under the heading "Director's Restriction of All Prisoner's Visits," the Policy Directive states:

> . . . the Director may restrict all of a prisoner's visits if the prisoner is convicted or found guilty of . . . [t]wo or more violations of the Class I misconduct charge of substance abuse for behavior that occurred on or after January 1, 2007, which do not arise from the same incident. [ECF No. 98-4, PageID.1394]

Washington terminated Roden's visitation privileges pursuant to the Policy Directive in effect at the time.

Roden does not meet the high burden to show that he is substantially likely to prevail on the merits of his claim. This factor weighs against injunctive relief.

**B. Roden does not show irreparable injury**

Roden says that denial of visitation rights is irreparable injury because it is a continuing violation of his constitutional rights.

The Supreme Court held that a similar visitation restriction was constitutional in *Overton v. Bazzetta*, 539 U.S. 126, 134 (2003).

In *Bazzetta* the Supreme Court examined MDOC visitation restriction policies. It held that a two-year restriction for inmates convicted of two substance abuse violations served a legitimate goal in deterring the use of drugs and alcohol within the prison. *Id*. It further held that the prison provided alternative means of communicating because inmates on restricted visitation could contact their families through letters or phone calls. *Id*. at 135. Therefore, the policy did not deprive plaintiffs of constitutional rights. *Id.*

Roden's visitation restrictions are less severe than the restrictions upheld by the Supreme Court in *Bazzetta*. Roden can appeal the termination of his visitation privileges after one year; the policy at play in *Bazzetta* barred visitation for twice as long before it allowed for appeal.

Roden also claims that Washington terminated his visitation privileges in retaliation for his suit against other MDOC employees, and that this is irreparable injury in and of itself. This argument is conclusory. Roden offers no evidence of retaliation.

Roden does not show irreparable injury. This factor weighs against granting injunctive relief.

### C. Granting the injunction would cause more harm than denying it

The Court must balance the harm to Roden should it deny the injunction against the harm to Washington and the MDOC if it grants the injunction.

Defendants argue that balancing the harms weighs against issuing a preliminary injunction, because MDOC has a legitimate interest in regulating substance use in prisons, and allowing Roden to challenge it would disrupt prison operations. Roden groups this factor with the public interest and does not make a specific argument relating to the balance of harms; he only restates that he suffered irreparable harm.

Defendants also point out that federal district courts must recognize the state's strong interest in prison management and fashion the least intrusive remedy available. *Kendrick v. Bland*, 740 F.2d 432, 437-38 (6th Cir. 1984).

The Supreme Court recognized the legitimate purpose of banning visitation for inmates with substance use violations in *Bazzetta*. *Id.* at 134. "Withdrawing visitation privileges is a proper and even necessary management technique" to deter substance use. *Id.* Therefore, granting the injunction would cause a high degree of harm to the MDOC.

In addition, it has been more than one year since Washington restricted Roden's visitation privileges. Under the applicable Policy Directive, Roden can now request that the MDOC remove his visitation restriction. [ECF No. 98-4, PageID.1395]

The Supreme Court warned in *Bazzetta* that if "MDOC's regulation is treated as a *de facto* permanent ban on all visitation for certain inmates" they would potentially reach the conclusion that the policy was not constitutional. *Id.* However, that is not the question before the Court here.

Because Roden can appeal his visitation restriction through MDOC procedures, injunctive relief is certainly not the least intrusive remedy available to him.

This factor weighs against granting an injunction.

**D. The public interest is not served by granting the injunction**

Roden argues that it is in the public interest to correctly enforce MDOC regulations. The Court agrees.

As discussed above, Roden relies on an inapplicable Policy Directive. Washington followed the correct procedure.

The Supreme Court has upheld a more restrictive policy from the MDOC. The public interest would not be served if this Court interferes with the implementation of legitimate and constitutional MDOC policies.

This factor weighs against granting injunctive relief.

## IV. CONCLUSION

The Court **DENIES** Roden's motion for preliminary injunction and temporary restraining order.

**IT IS ORDERED.**

s/ Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated: 10/31/2019