UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JONATHAN RODEN,

                Plaintiff,                  Case No. 16-11208
                                             District Judge Victoria A. Roberts
v.                                    Magistrate Judge Anthony P. Patti

MICHELLE FLOYD, *et al.,*

                Defendants.

_____/

## ORDER DENYING PLAINTIFF'S MOTION FOR SANCTIONS AND CIVIL CONTEMPT [ECF No. 113]

### I.    INTRODUCTION

Plaintiff Jonathan Roden ("Roden") filed a Motion for Sanctions and Civil Contempt against Defendants Michelle Floyd, Richard Cady, and Shawn Brewer, all Michigan Department of Corrections ("MDOC") employees. Roden alleges a host of discovery violations pertaining to his First Amendment retaliation action. He claims Defendants transferred him to another correctional facility because he filed multiple grievances against them.

1

Roden asks the Court to: (1) establish Defendants' liability for retaliation and due process violations, grant his Motion for Summary Judgment [ECF No. 106] and award $50,000 plus interest and costs; (2) reimburse Roden $5,500 for discovery costs; and (3) set his remaining claim of conspiracy to manufacture a sexual harassment for trial with evidentiary restrictions.

Because Roden fails to show by clear and convincing evidence that Defendants violated any court order, or that Defendants engaged in bad faith conduct, the Court **DENIES** his Motion. The standard for sanctions is high, and the Court does not find Defendants' conduct sanctionable. However, Defendants must amend and/or supplement their discovery responses as outlined in this order by **April 30, 2020**.

## II.    RELEVANT PROCEDURAL BACKGROUND

Roden filed a Motion to Compel Shawn Brewer to provide answers to several discovery requests. [ECF No. 80]. Magistrate Judge Patti ordered Brewer to supplement and/or amend his responses to several discovery requests by March 27, 2019. [ECF No. 89, PageID.1294].

Request No. 7 required Defendants to disclose "all facility wide [sic] J-Pay messages sent from [Brewer] to JCF population concerning more

2

phones being requested, denied, and approved sent between May 1, 2015 and June 7, 2015." Brewer objected to the request, saying he was not in possession of and did not have access to the requested messages since he was no longer assigned to the Cotton Correctional Facility. Magistrate Judge Patti sustained the objection and found that Roden failed to show that Brewer, in his capacity, had access to the requested messages. Magistrate Judge Patti noted that MDOC had since transitioned from J-Pay to a new third-party vendor.

Roden objected to this finding. He stated that while J-Pay is no longer used to deposit money into prisoner accounts, MDOC still utilizes J-Pay for "all electronic messaging communications and media." [ECF No. 90, PageID.1297]. Roden explained the process by which Brewer could access messages he sent through the system while he was the Cotton Correctional Facility warden.

The Court held a status conference on November 12, 2019. The Court ordered defense counsel to contact the MDOC Office of Legal Affairs at the Cotton Facility, and find out who had possession, custody, and control of the requested information. [ECF No. 110]. After a second status conference on November 21, 2019, the Court ordered defense counsel – in his capacity as counsel for the MDOC – to obtain and provide Roden with the requested J-

3

Pay records that were in the possession, custody, or control of MDOC personnel. [ECF No. 111]. Defense counsel filed proof of service on December 5, 2019. He certified that he served one J-Pay message via first class mail to Roden. This message is dated June 24, 2015, Bates Numbered RODEN001049. The Court notes that this message is outside the range of dates Roden requested.

Now, Roden says what remains in dispute are responsive J-Pay messages within the range of dates requested, texts, and emails from MDOC employees J. Rohrig and M. Bennett. He also alleges Defendants made several false submissions to the Court throughout this litigation.

## III.   STANDARD OF REVIEW

Roden cites Federal Rules of Civil Procedure 37(b) and (c), and 11(b) and (c) as the bases for his Motion.

Under Fed. R. Civ. P. 37(b)(2), a district court may sanction parties for failure to comply with discovery orders in several ways. "A district court unquestionably has the power to hold a litigant in civil contempt for failure to comply with a discovery order." *United States v. Conces,* 507 F.3d 1028, 1041 (6th Cir. 2007). The moving party must prove by clear and convincing evidence that the party to be held in contempt violated a court order. *Id.* at

4

1042 (citing *Grace v. Ctr. For Auto Safety,* 72 F.3d 1236, 1241 (6th Cir. 1996). "The order in question must be 'definite and specific,' and 'ambiguities must be resolved in favor of" the persons alleged to be in contempt." *Id.* (internal quotation marks and citations omitted).

Except where Rule 37(c) applies, Rule 37(b) usually has "no application" where there is no court order. *United States v. Reyes,* 307 F.3d 451 (6th Cir. 2002). Under Rule 37(c), the Court may impose appropriate sanctions for a party's failure "to provide information or identify a witness as required by Rule 26(a) or (e)." Fed. R. Civ. P. 37(c)(1). *See E.E.O.C. v. JP Morgan Chase Bank, N.A.,* 295 F.R.D. 166, 173 (S.D. Ohio, Feb. 28, 2013).

Under Fed. R. Civ. P. 11, a Court may impose appropriate sanctions "when a party submits to the court pleadings, motions or papers that are presented for an improper purpose, are not warranted by existing law or a nonfrivolous extension of the law, or if the allegations and factual contentions do not have evidentiary support." *First Bank of Marietta v. Hartford Underwriters Ins. Co.,* 307 F.3d 501, 510 (6th Cir. 2002); Fed. R. Civ. P. 11(b)(1) through (3); Fed. R. Civ. P. 11(c). However, Rule 11 – by its own terms – "does not apply to disclosures and discovery requests, responses, objections, and motions under Rules 26 through 37." Fed. R. Civ. P. 11(d).

Independent of the Federal Rules of Civil Procedure, a district court has the inherent authority to sanction parties for bad faith conduct in litigation. *Chambers v. NASCO, Inc.,* 501 U.S. 32, 46 (1991) ("[W]hen there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the Rules, the court should ordinarily rely on the Rules rather than the inherent power. But if in the informed discretion of the court, neither the statute nor the Rules are up to the task, the court may safely rely on its inherent power.").

## IV. ANALYSIS

Roden says the documents and records in dispute are "J-Pay messages, texts and emails from J. Rohrig and M. Bennette [sic]." [ECF No. 113, PageID.1553]. J. Rohrig and M. Bennett are MDOC employees, but they are not parties to this case.

Roden calls these materials "essential evidence." He argues defense counsel defied a Court order to "acquire and provide the essential evidence" by providing only one J-Pay message sent from Brewer to a JCF administrative assistant, instead of to the entire JCF population.

Separate from any specific discovery order, Roden also alleges Defendants made numerous false submissions.

6

The Court will discuss the specific discovery order at issue first, and then turn to Roden's allegations of false submissions by Defendants.

### a. The Court's December 2019 Order [ECF No. 111]

The Court's December 3, 2019 order must be read in conjunction with its November 21, 2019 order. [ECF No. 110]. Both address Roden's objection to Magistrate Judge Patti's order regarding Roden's discovery Request for Production No. 7 for "all facility wide J-Pay messages sent from [Brewer] to JCF population concerning more phones being requested, denied, and approved sent between May 1, 2015 and June 7, 2015."

Roden says Defendants refused to comply with the Court's order to provide "essential evidence." Roden calls the "essential evidence" J-Pay messages, texts, and e-mails from J. Rohrig and M. Bennett.

Defendants say they did not violate any Court order because the Court's December 3, 2019 order directed defense counsel to produce responsive J-Pay messages – not other discovery – and that defense counsel complied by producing the only responsive J-Pay message. With that, he filed proof of service.

Defense counsel is correct regarding the scope of the Court's order. Neither order addresses text messages or emails from witnesses.

7

But Roden also argues the single J-Pay message produced by Defendants is "patently non-responsive" because it is "the wrong type of correspondence, between the wrong parties, and outside of the time line (sic)."

Defendants acknowledge that this copy of the J-Pay message was sent to a JCF administrative assistant, but they say an identical copy was sent to JCF inmates through J-Pay as well.

The standard for sanctions is high. But while Defendants' discovery response is insufficient, Roden does not prove by clear and convincing evidence that Defendants defied the Court's order to produce J-Pay messages. The Court notes the produced J-Pay message is outside of the requested timeframe; however, Defendants clarify in their discovery response that this is the only responsive J-Pay message, [ECF No. 113, PageID.1579] and the message is regarding the requested subject matter – the installation of phones. *Id.* at 1580. However, the Court cannot discern why Defendants provided Roden with a copy of an email to an administrative assistant instead of a copy of the J-Pay message sent to JCF inmates. Although this is the second order directing Defendants to respond to this discovery request, the Court declines to impose sanctions. However,

8

Defendants must amend and/or supplement their discovery response to Roden's Request for Production No. 7 by **April 30, 2020.**

### b. Defendants' Alleged False Submissions

#### i. Alleged Omitted Emails from Defendant Floyd and Other False Submissions

Roden says Defendants violated Rule 11(b) by submitting several false submissions to the Court. Roden says these submissions are demonstrably false and manufactured to mislead the Court, delay proceedings, cover up retaliation, and have his lawsuit dismissed. The Court addresses each allegation.

##### 1. Alleged False Submissions

Roden says the following submissions are false and misleading: (1) affidavits from Defendant Floyd alleging that Roden was found in possession of a love letter that was sexual in nature describing a female teacher associated with Jackson College [ECF No. 19-9]; (2) arguments in Defendants second Motion for Summary Judgment that Roden's transfer was the result of his infatuation with JCF female staff, and his sexual fantasies involving JCF female staff required immediate action [ECF No. 44]; (3) a grievance response attached to Defendants second Motion for Summary Judgment that Dr. Clark – a teacher with Jackson College – submitted a prisoner program work assignment evaluation to terminate

Roden from his work assignment as a tutor because he was writing letters to female staff [ECF No. 44-3].

Roden also points to a response from Defendants' Litigation Coordinator – Kimberly Napier – to a 2015 Freedom of Information Act request. Roden says Napier claimed there were 100 pages of documents demonstrating Roden was writing letters to staff. Roden says he paid a $254.00 processing fee to receive these documents; however, after a 3-month delay, Napier admitted no such documents existed. But Napier is not a party to this case, and that submission was not in response to any discovery request in this case. Although this is troubling, the Court will not consider this. Roden does not allege Defendants played a part in Napier's conduct.

Defendants say Roden claims certain submissions are false because he disagrees with their contents. They say Roden makes conclusory statements about Defendants' alleged omissions but fails to provide supporting evidence other than his own disagreement with their arguments. Defendants say they have different points of view, memories, and opinions, so it is "without question" that some of their answers would be slightly different. [ECF No. 14, PageID.1590].

Roden says arguments that Defendants made in support of their motions for summary judgment are false and attempts to support his allegations by pointing to differing discovery answers from Defendants. He says "Defendants" claimed he was writing sexually suggestive letters and fantasizing about female staff, and that he posed a threat to safety and security which required immediate action. He says Cady stated he has no knowledge of this, Floyd admitted she has no knowledge of this, and that Brewer initially claimed he saw a love letter, but later admitted he recalled a greeting card.

The Court cannot impose sanctions under Rule 11 for discovery violations. *See* Fed. R. Civ. P. 11(d). Aside from Defendants' differing discovery responses, Roden does not present evidence to support his claim that Defendants submitted false arguments to the Court in their motions for summary judgment. Further, the Court is not persuaded that Defendants varying discovery responses rise to a sanctionable level under Rule 37 or the Court's inherent power. First, the Court dismissed defendants from this case – Roden does not point to a specific defendant's statements. And, Roden does not show that Defendants intentionally made false statements in discovery.

11

### 2. Roden's Motion to Compel Defendant Brewer's Discovery Responses

Roden sought to compel Brewer's response to his Request No. 5, "any and all e-mails to or from any staff at JCF to or from MDOC Central Classification between July 27, 2015 and September 1, 2015, pertaining to or related to Roden, 319782, Transfer Hold." [ECF No. 80, PageID.1189]. Brewer objected to the request; he said it was overly broad and unduly burdensome, and the only emails he would have possession, custody, or control of are those that were either sent to or received by him; he does not have access to the emails of other MDOC employees. [ECF No. 85, PageID.1266].

Now, Roden says Defendants' assertion that they do not have possession, custody, or control of emails of JCF staff is false because Defendants already produced emails from outside their alleged access and control. Specifically, Roden says Brewer provided emails between "J. Vanburen" and Floyd; and Floyd provided emails between "J. Vanburen" and "K. Napier," "K. Napier" and "K. Rose," and "K. Napier" and "V. Lashley." [ECF No. 113, PageID.1554].

Defendants say they do not have access to co-worker emails, and the email chains Roden submits are simply email chains, where they were forwarded earlier emails.

In his Reply brief, Roden says he made a document request to Floyd for emails in 2017. He says Floyd failed to provide two emails in the 2017 document request; instead, the documents were provided by Brewer in 2019.

The Court cannot apply sanctions under Rule 11(b) for "disclosures and discovery requests, responses, objections, and motions under Rules 26 through 37." Fed. R. Civ. P. 11(d). However, the Court may impose sanctions under Rule 37(c)(1) for failure to disclose information. The Court is disturbed by Roden's allegation that Floyd omitted emails in her discovery responses. Before the Court considers the imposition of sanctions, Defendants must respond to Roden's allegation and explain why emails from Floyd were not included in her response. Defendants must do so by **April 30, 2020.**

### ii.    Requested Emails from Witnesses

Given Roden's allegation that Defendants do in fact have access to JCF and MDOC staff emails, Roden asks the Court to impose sanctions on them for their refusal to provide emails from MDOC employees J. Rohrig and M. Bennett. Magistrate Judge Patti allowed Roden to serve subpoenas on

MDOC litigation manager J. Curling, and J. Rohrig, and M. Bennett. [ECF No. 97]. The docket does not reflect a return of service regarding these subpoenas. It is unclear whether the subpoenas were successfully served. But Roden says Defendants are suppressing evidence and witness testimony by instructing, acquiescing, and allowing nonparty managing agents (he does not name these managing agents, but presumably he means J. Rohrig and M. Bennett based on his indication that their emails are "essential evidence") to refuse to return service notices. He also says Defendants presented false reasons for refusing to provide this discovery.

Defendants say this claim is without merit. They say: (1) emails of non-parties are not under their control; (2) Roden did not serve a copy of the non-party subpoenas on Defendants; and (3) Defendants cannot be penalized for the acts of non-parties.

Roden submits an affidavit saying he did mail subpoenas for non-party witnesses to defense counsel and the litigation manager for the MDOC. He attaches mailing receipts as exhibits. Roden does not attach copies of the actual subpoenas, nor did he file a certificate of service on the docket. *See* Fed. R. Civ. P. 45(b)(4).

Regardless of whether Roden served Defendants with the subpoenas, they are correct: Defendants cannot be compelled to produce documents they do not have access to. Nor have Defendants violated any discovery order because witnesses did not respond to Roden's subpoenas. Roden fails to support his allegation that Defendants are suppressing evidence and testimony from witnesses.

Fed. R. Civ. P. 45 governs the issuance of subpoenas, and allows the Court to sanction anyone who, after having been served, fails "without adequate excuse to obey the subpoena or an order related to it." *Id.* There is no indication on the docket that subpoenas were successfully served on witnesses. If and when Roden successfully does this, and the witnesses fail to comply, Roden can file a motion for contempt against them under Fed. R. Civ. P. 45(g).

## V.   CONCLUSION

The Court **DENIES** Roden's Motion for Civil Contempt and Sanctions.

Defendants must: (1) amend and/or supplement their discovery response to Roden's Request for Production No. 7; and (2) respond to Roden's allegation and explain why emails from Floyd were not included in her response. Defendants must do this by **April 30, 2020**.

15

**IT IS ORDERED.**

Date: April 17, 2020                                s/ Victoria A. Roberts
                                                    Victoria A. Roberts
                                                    United States District Judge